STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHRISTA HALL  (CABN 328881)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    Christa.Hall@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>CHRISTOPHER WAGNER.,<br><br>    Defendant. | NO. 3:22-CR-00210-SI<br><br>UNITED STATE'S SENTENCING MEMORANDUM<br><br>Hearing Date:   January 20, 2023<br>Time:              12:00 p.m.<br>Courtroom:     1 |

Mr. Christopher Wagner ("Defendant") pleaded guilty to a single count—Possession of Child Pornography, a violation of 18 U.S.C. §§ 2252(a)(4)(B) and (b)(2), on October 7, 2022. Dkt. 41 ("Plea Agreement"). The maximum prison term for this offense is twenty years. The parties agreed to a total offense level of 28, including enhancements and adjustments. In contrast, Probation finds a total offense level of 33 adding a 5-level enhancement. Dkt. 42, ¶83, Presentence Investigation Report ("PSR"). Notwithstanding the PSR, the government requests the Court sentence defendant to 84 months imprisonment. This result is on balance with the factors considered under 18 U.S.C. § 3553(a).

# CONDUCT[1]

The United States agrees with and incorporates by reference the facts set forth in the PSR.

**A. Current Conduct**

While investigating child pornography trafficking, law enforcement detected suspicious activity originating from IP address 71.198.29.150 (the "IP address") on an Internet-based, peer to peer ("P2P") network. Between May and June of 2021, the user of the IP address requested pieces[2] of at least three child pornographic videos. Specifically, on or around May 29, 2021, at 1:12 p.m. UTC and 4:06 p.m. UTC, the user of the IP address requested the file "BROTHER LATIN LOVE CHARTER THREE KIDSUTRA.mp4." This file depicted a nude adult male's erect penis anally penetrating a nude minor

---

[1] This memorandum includes explicit and detailed descriptions of child sexual assault.

[2] In this case, defendant used an internet-based peer-to-peer network called "Freenet." Freenet allows users to anonymously share files, chats on message boards, and access websites within the network. To use Freenet, a user must download the Freenet software that is free and publicly available. The user must also have Freenet "source code"—i.e., the computer programming code that facilitates Freenet's operation. This is also publicly available.

Freenet creates an environment where users can seek out and share child pornography files that are encrypted. When a user uploads a file into Freenet, the software breaks the file into pieces (called "blocks") and encrypts each piece. The encrypted pieces of the file are then distributed randomly and stored throughout the Freenet network of peers. The files by themselves are not in readable format. The software also creates an index piece that contains a list of all the pieces of the file and a unique key—a series of letters, numbers and special characters—that is used to download the file. A user must have the key for the file to download a file on Freenet. When a user attempts to download a file via Freenet, Freenet downloads the piece of the file containing the index, which provides the information required to retrieve the individual pieces of the file. The Freenet software then requests all of the pieces of the file from the user's peers. Rather than request all of the file pieces from a single peer, requests for files are divided up in roughly equal amounts among the user's peers. If a user's peer does not have the particular requested pieces in its storage, that peer will then divide up and ask its peers for the pieces, and so on.

For example, if user A has 10 peers and requests 1000 pieces of a file, roughly 100 pieces are requested from each one of user A's peers. If peer B receives user A's request for 100 pieces of the file but does not have any of those pieces in its storage, peer B forwards on the request for those pieces to peer B's peers. If peer B has 10 peers of its own, roughly 10 pieces are requested from each one of peer B's peers.

In addition, Freenet does not have a search function like a normal internet browser. Users who wish to locate and download child pornography from Freenet must identify the key associated with a particular child pornography file and then use that key to download the file. Freenet users can find these types of keys in many ways. Users can look to message boards that allow users to post messages involving exploitation of minors. These messages can contain keys of child pornography files. Users can also look to "Freesites," which are websites on Freenet that can contain images or videos. Users can also reach out to other users for keys.

U.S. SENTENCING MEMORANDUM        2
3:22-CR-00210-SI

male. Second, on or around Saturday, June 26, 2021 at 3:41 a.m. UTC and 5:14 a.m. UTC, the user of the IP address requested the file "[Asian] 2 men 1 boy bedroom HQ.mp4." The file depicts two nude adult males anally penetrating a nude minor male. Third, on or around Saturday, June 26, 2021 at 3:55 a.m. UTC and 4:44 a.m. UTC, the user of the IP address requested the file "Christian-San-Javier-13yo-Boy-Rides-Dicks-Of-Dad-On-Bed-Deep-Anal-Fucked-3Ways-Hq-RealSound.avi." The file depicts a minor male wearing a t-shirt and no pants or underwear straddling a nude adult male, whose erect penis is inserted into the boy's anus.

In September of 2021, law enforcement requested and received subscriber information for the user of the IP address. The results came back to Christopher Wagner with an address in Santa Rosa and an email of chriswagner1980@comcast.net. Christopher Wagner was determined to reside at the address. Another person, T.B. also lived at the residence as well.

In December of 2021, federal and local law enforcement searched the residence.[3] During the course of the search, agents located a computer, a Dell Precision 5820, the "User Name" of which was Christopher Wagner. In a folder named waggie/Test1024 were multiple files depicting child sexual abuse material. This computer was located in Wagner's bedroom, which was identified by T.B., Wagner's live-in boyfriend.

On this same computer, law enforcement viewed an mp4 file entitled "Baby dental care," a video approximately 3 minutes in length, in which a green toothbrush is inserted into the vagina of a nude baby, and then a cylindrical purple object is inserted into the baby's vagina and then into its mouth. Written on a sign behind the baby were the words "Puffy Pudenda Hoarders Hell." Law enforcement also viewed another video, from the same computer, titled IMG_8104.mov in which an adult male masturbates and ejaculates onto a nude minor male.

---

[3] Case No. 3:21-mj-71909.

U.S. SENTENCING MEMORANDUM   3
3:22-CR-00210-SI

In addition, law enforcement observed, on the same computer, the three files titled "BROTHER LATIN LOVE CHARTER THREE KIDSUTRA.mp4," "[Asian] 2 men 1 boy bedroom HQ.mp4," and "Christian-San-Javier-13yo-Boy-Rides-Dicks-Of-Dad-On-Bed-Deep-Anal-Fucked-3Ways-Hq-RealSound.avi." These files are the exact same file names as the files law enforcement observed during their investigation between May and June of 2021 and previously downloaded from the IP address.

The following devices were seized from Wagner's residence during the execution of the search warrant on December 9, 2021: (1) Samsung Galaxy S9+ IMEI ending 88513; (2) Sony 4MB Memory Stick; (3) Dell Precision M2800 S/N J034T32; (4) Dell Precision T3500 S/N 03JV66 (T.B.'s Laptop): (5) SK Hynix 256GB Hard Drive S/N CN3K; (6) SoloPro ioSafe Hard Drive S/N ending 7797; (7) Synology DiskStation Network Attached Storage S/N ending 2300; (8) Dell Precision 5820 Service Tag: GS2CR53; (9) Netgear GS011MX Unmanaged switch ethernet port S/N ending 0083; (10) Dell Precision 57600 laptop ex: 38593847487; and (11) Juniper Networks SRX240 Ethernet port S/N ending 0071.[4]

A further search of defendant's electronic property showed, and defendant admits, that on or about December 10, 2021, using a computer, defendant possessed a video file titled "SC2_000862.mp4.jpg," which depicted an image of a nude prepubescent male laying on his back in a bed with a dark pink ball gag in his mouth. He was wearing a blue collar. The male's wrists were bound together in black and silver cuffs while his right hand gripped his penis. On or about December 10, 2021, using a computer, defendant possessed a file named "y005.jpg," which depicted a nude prepubescent male in a metal cage. He was wearing a black collar around his neck. The male was bent over and looking between his legs, with his anus and testicles visible to the camera.

---

[4] In the Plea Agreement, the parties narrowed down the items defendant is to forfeit, which include the 5820 Dell Precision, a Juniper Networks SRX240 ethernet port, a Netgear GS 110 MX unmanaged switch ethernet port, and a Synolgoy Disk Station Network Attached storage. During this case, defendant requested the government return to him specific information from his computer. The government has since provided defendant with a C.D. including the information requested.

A review of defendant's Samsung phone depicts many photos of minors. Images include minors swimming in a pool, sleeping on a couch, a large group of people with a minor male sitting on defendant's lap, at a restaurant, eating ice cream, in bathing suits, sleeping in the passenger side of a vehicle, laying down in a tub, and playing together. These photos have capture times ranging from 2016 to 2020.

On defendant's laptop, the Dell Precision 5820, law enforcement recovered 8,136 images and 3,310 videos of CAM (Child Abuse Material) and 7,196 images and 190 videos of Non-CAM material (where the age is difficult to determine) and 51 images and 34 videos of Child Exploitive material from defendant's Dell laptop. The videos totaled 412 hours and 47 minutes, and 9 seconds.

**B. Prior Conduct**

In December 2021, law enforcement was present during an interview of a minor, R.M., by a child/adolescent forensic interviewer. At the time of the interview, R.M. was 14 and a freshman. R.M. was introduced to defendant through R.M.'s brother—T.B.—defendant's live-in boyfriend. R.M. met defendant in the summer after seventh grade. R.M. told the interviewer that when he spent time with defendant, defendant would ask him sex-related questions. For example, on their first car ride together, and in defendant's car, defendant asked R.M., who at the time was 12, what his preferred sex was, whether he liked girls or boys, and what his kinks were. Another example was when R.M. went camping together. Defendant asked R.M. if he watched porn. On occasion, R.M. would go to defendant and T.B.'s house. While there, defendant told him it was okay to just wear underwear in the house. Defendant would sometimes tickle R.M.. At dinner, defendant asked R.M. if he wanted alcohol like beer or wine. At some point, defendant told R.M. about different kinds of kinks, such as people being tied down.[5]

---

[5] This is a summary of the interview and not a verbatim account.

U.S. SENTENCING MEMORANDUM    5
3:22-CR-00210-SI

During the search of defendant's residence in December 2021, law enforcement also recovered several journal entries found on defendant's laptop, the Dell Precision 5820. In one entry defendant states: "This is certainly controversial, and many people will be disturbed and possibly sickened by what is contained herein." This entry goes onto describe defendant having a sexual encounter with, presumably, a child/pre-teen.

In another entry, defendant discusses his interest in a male. Defendant states: "DAMN SOCIAL TABOOS!" If society hadn't fucked any type of close relationship, I'd at least be able to express my feelings without fear of damaging our relationship or fear of reprisal. Maybe I can express my feelings to him…"

In another entry, defendant discusses his struggles with "assorted paraphilia." He states that he felt that he needed to "document this" to help society "accept" people like him. In this same entry, defendant goes on to say, "How do I write this? Will it incriminate me somehow despite my precautions? Even as I save this to a complex encrypted partition, I sill fear putting it into text…[m]y dear, dear boy, how unknowingly you torture me." In the next paragraph, defendant describes character traits of various children. He then states: "[t]his is much more than an addiction. I can quit smoking. I can give up beer, but fighting that biological drive, what do I do?... [H]ow can I ever hope to have an even somewhat healthy relationship if society rejects me without looking at the truth of the matter? I do truly believe that in accepting society, that I can have a relationship with a child." He then uses Ancient Greek society as an example.

Law enforcement also uncovered possible evidence of distribution.

**C. Victims**

The child identification report concluded that 195 series were identified within the data seized from defendant. The following series have made restitution claims: 8 Kids (1-5), BluesPlaid4, Cindy,

Feb212, Jenny, Jester, Rap72, SpongeB, SurferHair, Tara, and Vicky. Victim impact statements will also be filed under seal and sent to the Court.

## ARGUMENT

### I. Legal Standard

The Court should impose a sentence sufficient but not greater than necessary to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also* 18 U.S.C. § 3553(a). The Court should begin the process of determining an appropriate sentence by calculating the correct sentencing range under the advisory Guidelines. *Id*. After determining the appropriate advisory Guidelines calculation, the Court should then evaluate the sentence for substantive reasonableness considering the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Following the Supreme Court's decision in *United States v. Booker*, 543 U.S. 220, 245 (2005), this Court may consider any of the sentencing factors set forth in 18 U.S.C. § 3553(a) when imposing sentence, irrespective of the sentencing guidelines calculation applicable to the offense of conviction. *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008).

### II. Sentencing Recommendation

The government requests the Court sentence defendant to 84 months custody. This sentence reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and provides the defendant with needed correctional treatment. 84 months custody is based on a total offense level of 28 and a criminal history category of 0. This places the defendant in the guidelines range of 78-97 months imprisonment. This guidelines range does not authorize a sentence of probation. *See* USSG §5C1.1; USSG §5B1.1, Note 2.

On October 7, 2022, the parties agreed to the following in the Plea Agreement:

U.S. SENTENCING MEMORANDUM         7
3:22-CR-00210-SI

| | | |
|---|---|---|
| | Base Offense Level, USSG §2G2.2(a)(1) | 18 |
| | Material involved a prepubescent minor or a minor who had not attained the age of 12 years, USSG §2G2.2(b)(2) | +2 |
| | Offense involved material that portrays sadistic, or masochist conduct or other depictions of violence, USSG §2G2.2(b)(4) | +4 |
| | Offense involved the use of a computer or interactive computer service for the possession of materials, USSG §2G2.2(b)(6) | +2 |
| | Offense involved at least 600 images or more, USSG §2G2.2(b)(7) | +5 |
| | Acceptance of responsibility (if eligible) | -3 |
| | **Adjusted Offense Level** | **28** |

In contrast, the Probation Officer determine a total offense level of 33. *See* PSR ¶83. With zero criminal history, this places defendant's guidelines between 135-168 months of imprisonment.

The difference between the recommendations rests with a +5-level enhancement related to a pattern of activity involving the sexual abuse or sexual exploitation of a minor falling under USSG §2G2.2(b)(5). The government acknowledges the enhancement in the PSR is correct. Notwithstanding this enhancement, the government ultimately recommends what the parties agreed to, which is a total offense level of 33. If the Court disagrees and concludes the specific offense characteristics should be included, the government requests the Court vary downward and impose a sentence associated with a total offense level of 28.

### III. Application of the Factors In 18 U.S.C. § 3553(a) Demonstrates That A Sentence of 84 Months Imprisonment (7 years) And Ten Years of Supervised Release is Reasonable.

The statutory sentencing factors support the 84 month sentence recommended by the government. The Probation Office recommends a 135-month sentence—roughly a four year difference.

**A. The Nature of the Offense**

U.S. SENTENCING MEMORANDUM            8
3:22-CR-00210-SI

This is a possession case where defendant operated on a particular platform on the Internet used by a more sophisticated user. As described in more detail above, even though the Freenet software is available to the public, the actual process of obtaining, sharing, and or downloading files is not as simple as a normal download from regular use of the internet. This platform is ripe for more sophisticated users like the defendant to proliferate child pornography and to protect themselves from law enforcement. Freenet ultimately protects users like defendant who use it for illegal reasons. Defendant's possession: 8,136 images and 3,310 videos of CAM (Child Abuse Material) and 7,196 images and 190 videos of Non-CAM material and 51 images and 34 videos of Child Exploitive material. This is a significant amount of child abuse material. And this is not simply photos and videos of nude children like the title of "child pornography" suggests. These are photographs and videos of children being sexually assaulted. Their lives ruined for someone else's perverse gain. The type of imagery and videos in defendant's possession range from children of all ages and backgrounds as well as sadistic and masochistic conduct. These are real children portrayed in the most egregious and heinous way.

An enhancement for use of a computer is proper and not something to be disregarded because the use of computers is so common. It is particularly the electronic files and use of the computer that create the nightmare for these victims that their images of sexual assault will continue to be circulated and saved with no end in sight. The fact that these images can be accessed, duplicated, and shared so easily over the internet mean the victims who elect to be contacted, have to revisit their past over and over every time someone is caught with their images. If their images or videos were only on hard copy, there would likely be less circulation. With less circulation there may be less offenders and less access. Law enforcement would likely have a better chance of limiting a victim's exposure. With that, victims would have a better chance of recovering and healing. "[T]he sharing of images online drives the market for offenders to create more images and abuse hundreds of thousands of children each year."[6] In a survey

---

[6] National Center for Missing & Exploited Children (NCMEC), NCMEC's Statement Regarding

U.S. SENTENCING MEMORANDUM         9
3:22-CR-00210-SI

and report by the Canadian Centre for Child Protection, Inc., from 2017, respondents stated the impact from the hands on child sexual assault was different than that of the images and videos, because while the assault itself ended, the images were permanent and will never go away.[7] They feel powerless, shameful, and humiliated. In sum, this is not simply a person behind a computer, defendant is proliferating child sexual assault and a sentence of seven years reflects the seriousness of his offense.

### B. Characteristics of Defendant Wagner

The defendant has no criminal history but has an alleged history of inappropriate and sexual contact with minors. Defendant also worked in the information technology field. Defendant's history shows that he inserted himself in a position of trust with access to children when he helped as a chaperone for trips with the youth at his church. Most notable are his journal entries, where he writes in depth about his self-claimed "biological drive" of interest in children.

Through the investigation of this case, law enforcement interviewed defendant's then live-in boyfriend, T.B.. Through the interview they learned that T.B. met defendant when, at the time, he was approximately 10 years old and defendant was approximately 30 years old. T.B. told law enforcement that his relationship with defendant became sexual when he was 17. Defendant disagrees and states that T.B. was 18. T.B. told law enforcement that defendant confided in him about his sexual interest with several specific minors, one of which was T.B.'s own younger brother.

Through this investigation, law enforcement became aware that defendant's interests in child sexual assault went beyond the images of his computer. Through an interview with law enforcement, a male described his relationship and experience with defendant when the male was a minor. K.B. told law enforcement that when he was approximately 12 to 13 years old, he went to defendant's home. K.B.

---

End-to-End Encryption (October 3, 2019), https://www.missingkids.org/blog/2019/post-update/end-to-end-encryption (last visited January 12, 2023).

[7] Survivors' Survey Full Report 2017, Canadian Centre for Child Protection, Inc. (2017), https://www.protectchildren.ca/pdfs/C3P_SurvivorsSurveyFullReport2017.pdf (last visited January 12, 2023).

U.S. SENTENCING MEMORANDUM      10
3:22-CR-00210-SI

was alone with defendant in his home. Defendant asked K.B. about things of sexual nature. The then-minor went into defendant's bedroom and defendant showed him pornography. K.B. believes defendant then began masturbating and asked the then-minor to expose himself or to put his hands down his pants to touch his penis. He knew defendant through church.

Defendant has a skillset in technology and has used that to his advantage as it relates to his child sexual interests. Not only was he using the Freenet platform to receive child pornography, but he stored it on an encrypted Synology Storage device. During an interview with law enforcement, T.B. told them about the encrypted device and that defendant told him that law enforcement would not be able to crack the encryption.

### C. Promote Respect for the Law, Protect the Public, Punishment and Deterrence

The government's recommended sentence of 84 months' imprisonment also "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment for the offense. 18 U.S.C. § 3553(a)(2)(A). The sentence this Court imposes will send a message, both to the defendant, as well as to others engaged in the practice of possession of child pornography, that such conduct is unacceptable, and will, in fact, result in a significant period of incarceration. The recommended sentence would deter the defendant and others from receiving, downloading, sharing, and generally proliferating child sexual assault through electronic images and videos online.

### RESTITUTION

Because this is a child pornography case, the Amy, Vicky, and Andy Child Pornography Victim Assistance Act of 2018 applies. The court shall determine the full amount of the victim's losses and shall order restitution in an amount that reflects the defendant's relative role in the causal process that underlies the victim's losses, but which is no less than $3,000. 18 U.S.C. § 2259(b)(2).

Here, the child identification report concluded that 195 series were identified within the data seized from defendant. The following series have made restitution claims: 8 Kids (1-5), BluesPlaid4,

U.S. SENTENCING MEMORANDUM              11
3:22-CR-00210-SI

Cindy, Feb212, Jenny, Jester, Rap72, SpongeB, SurferHair, Tara, and Vicky. In total, the victims' requests for restitution are between $57,000 and $106,000. The difference being that some victims have requested the court to decide what is fair and just between a range of amounts. The parties have not reached an agreement as to restitution.

| Victim | # of Images | Restitution Requested |
|---|---|---|
| 8 Kids – 1<br>8 Kids – 2<br>8 Kids – 3<br>8 Kids – 4<br>8 Kids – 5 | 21 | Victims have requested an amount that the Court deems fair and just between $3,000 - $15,000 per victim |
| Vicky "Lily" | 1 | $10,000 |
| SpongeB "Andy" | 24 | An amount between $3,000 - $5,000 |
| Jenny | 1 | Requested the Court to determine what is fair but no less than $3,000 |
| BluePlaid4 "Jordan" | 6 | Requested the Court to determine what is fair but no less than $3,000 |
| Jester "Dipper" | 2 | $5,000 |
| Rap72 "Jack" | 1 | $3,000 |
| Feb212 "Donatello" | 1 | $5,000 |
| Sweet White Sugar "Pia" | 4 | $5,000 |
| Surfer Hair "Jessy" | 703 | $5,000 |
| Cindy | 1 | $3,000 |
| **Totals** |  | **$57,000 - $106,000** |

# CONCLUSION

The United States respectfully requests that the Court impose a sentence of 84 months in custody, to be followed by 10 years of supervised release, with special assessments, forfeiture, and restitution.

DATED: January 13, 2023

Respectfully submitted,

STEPHANIE M. HINDS
United States Attorney

*Christa Hall*
CHRISTA HALL
Assistant United States Attorney